**STEVEN B. UNGAR**, OSB #960029
  steve@angelilaw.com
**KRISTEN TRANETZKI**, OSB #115730
  kristen@angelilaw.com
Angeli Ungar Law Group LLC
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

  Of Attorneys for Defendants Tung Wing Ho and
  Denise Wei-Ching Yee

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **NIKE, INC.**, an Oregon corporation,<br><br>   Plaintiff,<br><br> v.<br><br>**TUNG WING HO, KYLE KEOKI YAMAGUCHI, DENISE WEI-CHING YEE, SHU-CHU YAMAGUCHI**, and **JASON M. KEATING,**<br><br>   Defendants. | Case No.: 3:14-cv-00696-MO<br><br>**OPPOSED MOTION TO STAY CIVIL ACTION PENDING RESOLUTION OF CRIMINAL PROCEEDING AND MEMORANDUM IN SUPPORT**<br><br><br>**ORAL ARGUMENT REQUESTED** |

**LR 7-1 CERTIFICATE OF CONFERRAL**

   Counsel for Defendants Tung Wing Ho and Denise Wei-Ching Yee certifies that they

have conferred with counsel for plaintiff and that plaintiff opposes this motion.

## <u>MOTION</u>

Defendants Tung Wing Ho and Denise Wei-Ching Yee, through their counsel, Steven B. Ungar and Kristen L. Tranetzki, respectfully request that the Court issue an order staying this proceeding in its entirety during the pendency of a related criminal case in this District, captioned *United States v. Ho et al.*, United States District Court, District of Oregon, Case No. 3:14-cr-00282-KI.  Although counsel for plaintiff objects to this motion, it is well established that a Court may stay a civil action pending resolution of a criminal action when the interests of justice requires.  Here, given the identical conduct at the basis of the parallel civil and criminal proceedings, the stay will ensure that Mr. Ho and Ms. Yee's Constitutional Fifth Amendment rights are protected and do not become effectively meaningless.

Additionally, defendants Ho and Yee are trying to resolve this matter without need for further litigation and require additional time to do so.  A stay would allow additional time for settlement negotiations and potential mediation.  This motion is supported by the Memorandum in Support of Defendants' Opposed Motion for a Stay and the Declaration of Steven B. Ungar in Support of Defendants' Opposed Motion for a Stay, filed concurrently herewith. This motion is not intended for the purpose of undue delay, and no party will be prejudiced by the granting of this motion.

## <u>MEMORANDUM</u>

Defendants Tung Wing Ho and Denise Wei-Ching Yee, through their counsel Steven B. Ungar and Kristen L. Tranetzki, have filed a motion to stay this proceeding in its entirety during the pendency of a related criminal case in this District, captioned *United States v. Ho et al.*, United States District Court, District of Oregon, Case No. 3:14-cr-00282-KI.   It is well established that a court may stay a civil action pending resolution of a criminal action when the interests of justice require.   The Fifth Amendment to the United States Constitution mandates that no person shall be compelled to provide testimony against himself; this right against self-incrimination, however, faces an impasse when one attempts to maintain it during the pendency of parallel civil and criminal proceedings.   If invoked, defendants may incur civil liability simply by availing themselves of this Constitutional right; if not, statements made in the course of the civil proceeding – even when exculpatory—may nevertheless be used as evidence against them in the criminal matter.   As discussed further below, a stay here is thus necessary, in the interests of justice, to ensure Mr. Ho's and Ms. Yee's Constitutional rights do not become effectively meaningless.

## I.      BACKGROUND

On April 28, 2014, plaintiff Nike, Inc. ("Nike") filed the present action against Mr. Ho, Ms. Yee, and three other defendants, Kyle Keoki Yamaguchi, Shu-Chu Yamaguchi, and Jason M. Keating, alleging that Mr. Ho and Mr. Yamaguchi used their positions as managers at Nike to steal unique and/or custom athletic footwear in order to profit from the sale of those shoes to collectors of rare athletic shoes, and that they used Mr. Keating as the middle-man in this "unlawful enterprise."  (Compl. ¶¶ 1, 15-120.)  Ms. Yee and Mrs. Yamuguchi were alleged to have knowledge of and have assisted in the "unlawful enterprise."  (*Id.* ¶¶ 21-22.)  Ms. Yee is

Mr. Ho's long-time partner, and Mrs. Yamaguchi is Kyle Yamaguchi's wife.    (*Id.* ¶¶ 1, 5-6, 21-22.)

Mr. Ho and Ms. Yee requested and received an extension of time to respond to the Complaint in order to engage in settlement negotiations with Nike.    (ECF No. 17, 18, 23.)  The other defendants similarly requested and received extensions of responsive deadlines.  (*See* ECF No. 23.)  None of the defendants has yet filed an answer or otherwise moved to dismiss the Complaint.  Discovery has not yet commenced.

Since the last request for a continuance was granted, Mr. Ho was indicted by the Grand Jury in this District and has been charged with one count of Conspiracy to Transport, Receive, and Sell Stolen Goods, in violation of 18 U.S.C. § 371, and with two counts of Wire Fraud, in violation of 18 U.S.C. § 1343.  Defendants Kyle Keoki Yamaguchi and Jason Michael Keating were also named in the Indictment. *United States v. Ho*, Case No. 3:14-cr-00282-KI (D. Or. July 9, 2014 Indictment) (the "Indictment").

The Complaint and the Indictment allege nearly identical facts to support their allegations of a sneaker theft ring operated out of Nike, with the purpose of illicitly profiting from the unauthorized sale of rare and promotional shoes.  In particular, the Complaint alleges that:

> In breach of the trust placed in them by Nike, defendants Yamaguchi and Ho used their position as managers at Nike to steal unique and/or custom athletic footwear in order to profit from the sale of those shoes to collectors of rare athletic shoes, known in the industry as "Sneakerheads." Yamaguchi and Ho lied to Nike and its manufacturers by misrepresenting that the shoes would be used for promotional and marketing purposes in order to trick them into manufacturing inventory for their illicit scheme. Defendant Keating acted as the middle-man in Yamaguchi and Ho's unlawful enterprise by knowingly purchasing and re-selling the stolen footwear obtained by Yamaguchi and Ho. (Compl. ¶ 1.)

> Defendant Ho is a former employee of Nike. He was first employed at Nike's Beaverton Campus in June, 2006 as a business planning analyst for Nike's US Footwear division. After two intervening positions, Ho became Yamaguchi's successor as Promo Product Manager in 2012. (Compl. ¶ 4.)

Between 2012 and 2014, in concert with Yamaguchi, Ho ordered Stolen Footwear for the purpose of illicitly selling it to third parties for personal profit. Ho used Nike's computerized ordering system to place orders for Stolen Footwear. . . . Ho ordered, received, and removed large quantities of Stolen Footwear from the Nike Campus. Ho transported Stolen Footwear to his home or to other locations controlled by him and/or his girlfriend, Yee, in or near Portland. Ho then transferred some or all of the Stolen Footwear to Yamaguchi, who maintained it at his home or other locations controlled by him or his wife, Shu-Chu. Subsequently, Yamaguchi delivered Stolen Footwear received from Ho to third parties, such as Defendant Keating, in exchange for money, the proceeds of which Yamaguchi shared with Ho." (Compl. ¶ 19.)

This is nearly identical conduct to that alleged in the Indictment. The Indictment alleges that:

From approximately January 2012 to March 2014, TUNG WING HO was a promotional product manager for Nike's basketball division. As a promotional product manager, HO was responsible for generating interest in Nike products by providing unique styles of Nike basketball shoes to famous athletes and other celebrities-as well as members of their entourages-to wear while in the public eye. HO was authorized to obtain these promotional shoes by ordering them directly from Nike's manufacturing facilities in China. HO also used this process to order extra, unauthorized, pairs of the promotional shoes for himself. When the extra shoes arrived at Nike's headquarters, HO would steal them and take them to his home in Portland, Oregon." (Indictment ¶ 2.)

When HO succeeded YAMAGUCHI as the promotional product manager, YAMAGUCHI advised HO that he could conceal the scope of promotional shoe orders by billing them to different 'cost centers' in Nike's System." (Indictment ¶ 4.)

Defendants TUNG WING HO and KYLE KEOKI YAMAGUCHI agreed in July 2012 to work together to sell rare Nike sneakers that HO had acquired and would acquire through his position as promotional product manager at Nike, Inc. They agreed that YAMAGUCHI would take a twenty-percent commission on the sale of any shoes that HO sold through YAMAGUCHI. (Indictment ¶ 8.)

In August 2012, defendant JASON MICHAEL KEATING contacted defendant KYLE KEOKI YAMAGUCHI to solicit the sale of "unreleased & rare pairs" of Nike sneakers. YAMAGUCHI first agreed to sell KEATING sneakers from his own collection and then negotiated sales of larger lots of shoes that he acquired from TUNG WING HO. YAMAGUCHI led KEATING to believe that the shoes from HO had been stolen or otherwise purloined directly from the Chinese factory by a confederate in China. (Indictment ¶ 9.)

There can be no question that the civil action and the criminal action spring from the same nucleus of facts and address the exact same conduct.  In fact, counsel for Nike has either already filed or intends to file a notice of claim, as a victim of the alleged illegal activity, for the property seized from defendants by the federal government as part of its investigation leading up to the Indictment.  *See* Declaration of Steven B. Ungar in Support of Motion for Stay, filed concurrently herewith ("Ungar Decl.") at ¶ 10.

## II.    ARGUMENT

The privilege granted by the Fifth Amendment protects a person from being compelled to testify in any proceeding, including civil proceedings, when the answers may incriminate the person in a future criminal persecution.  The privilege pertains not only to inquiries that would be directly incriminating, but also "embraces those which would furnish a link in the chain of evidence" needed to prosecute a crime.  *Hoffman v. United States*, 341 U.S. 479, 486 (1951).  It applies whenever a response might "lead to incriminating evidence," even if the response "itself is not inculpatory."  *United States v. Hubbell*, 530 U.S. 27, 38 (2000) (internal quotation marks omitted); *see also Kastigar v. United States*, 406 U.S. 441, 445 (1972) (the Fifth Amendment privilege "protects against any disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used").  A witness who denies all culpability may even assert the Fifth Amendment privilege, *Ohio v. Reiner*, 532 U.S. 17, 18, 21 (2001), because the privilege "serves to protect the innocent who otherwise might be ensnared by ambiguous circumstances."  *Grunewald v. United States*, 353 U.S. 391, 421 (1957) (internal quotation marks omitted).  The privilege also extends to protect against the act of production in circumstances where the production of documents has  "some protected testimonial aspects."  *Hubbell*, 530 U.S. at 36, n.19.

PAGE 6 –    OPPOSED MOTION TO STAY CIVIL ACTION PENDING RESOLUTION OF
CRIMINAL PROCEEDING AND MEMORANDUM IN SUPPORT

To substantiate a claim of privilege, a witness is not "required to prove the hazard" because, by doing so, "he would be compelled to surrender the very protection which the privilege is designed to guarantee." *Hoffman*, 341 U.S. at 486. Rather, the privilege applies when it is simply "*evident from the implications of the question*, in the setting in which it is asked, that a responsive answer . . . or an explanation of why it cannot be answered *might be dangerous*." *Id.* at 486-87 (emphases added); *see also Arndstein v. McCarthy*, 254 U.S. 71, 72 (1920) (sustaining invocation of privilege because "[i]t is impossible to say from mere consideration of the questions propounded, in the light of the circumstances disclosed, that they could have been answered with entire impunity").

The courts have long recognized the dilemma faced by a civil litigant who is also the target of a criminal proceeding. An individual who does not invoke the Fifth Amendment privilege risks providing information that might assist in a criminal prosecution; an individual who invokes the privilege risks losing the civil case through the loss of his or her own testimony. *E.g. Volmar Distributors v. New York Post Co., Inc.*, 152 F.R.D. 36, 39-40 (S.D.N.Y. 1993). Mr. Ho is charged in a criminal indictment with conduct that is nearly identical to the allegations in the Complaint, and his long-time partner, Ms. Yee, may still have criminal exposure based on the conduct alleged in Nike's Complaint. Even though they deny wrongdoing, Mr. Ho and Ms. Yee will be unable to offer any meaningful defense to Nike's allegations without waiving their Fifth Amendment rights.

The decision to stay civil proceeding pending disposition of a criminal case lies within the discretion of the trial court. *See Landis v. North Am. Co.*, 299 U.S. 248, 255-56 (1936). The Court has authority to stay civil proceedings "when the interests of justice seem to require such action." *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995), *quoted in*

*McCormick v. Rexroth*, No. C 09-4188, 2010 WL 934242, at *1 (N.D. Cal. Mar. 15, 2010). The analysis should be undertaken "in light of the particular circumstances and competing interests involved in the case" and after consideration of the "extent to which the defendant's fifth amendment rights are implicated." *Keating*, 45 F.3d at 324 (internal citation omitted). A stay is appropriate, and most likely to be granted, "where the civil and criminal actions involve the same subject matter." *Brock v. Tolkow*, 109 F.R.D. 116, 119 (E.D.N.Y. 1985); *see also United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970) (a court's discretionary authority to issue a stay of proceedings is properly exercised when a civil action threatens to interfere with a related criminal proceeding) (collecting cases); *Kashi v. Gratsos*, 790 F.2d 1050, 1057 (2d Cir. 1986) (district court exercised "sound discretion" issuing stay due to pending criminal investigation).

Additional factors to be considered, according to the Ninth Circuit in *Keating*, include:

> (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay;
>
> (2) the burden which any particular aspect of the proceedings may impose on defendants;
>
> (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources;
>
> (4) the interests of persons not parties to the civil litigation; and
>
> (5) the interest of the public in the pending civil and criminal litigation.

*Keating*, 45 F.3d at 325.

All of these factors necessitate a stay here, as discussed further below.

## A.    The Implication of Mr. Ho's Fifth Amendment Rights Warrants a Stay

Mr. Ho and Ms. Yee should not be saddled with the impossible burden of attempting to "present[] [their] civil defense in a manner that protects [their] Fifth Amendment rights," when

the operative facts in the Complaint and the Indictment mirror each other. *McCormick*, 2010 WL 934242, at *3.

"The strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter." *SEC v. Dresser*, 628 F.2d 1368, 1375-76 (D.C. Cir. 1980); *Jones v. Conte*, 2005 WL 1287017, *1 (N.D. Cal. Apr. 19, 2005) (quoting *Dresser*); *see also Continental Ins. Co. v. Cota*, 2008 WL 4298372, *2 (N.D. Cal. Sept. 19, 2008) (stating that the extent to which fifth amendment rights are implicated by a civil proceeding is the first consideration when evaluating a stay request). The civil proceeding, if not deferred:

> [M]ight undermine the party's Fifth Amendment privilege against self-incrimination, expand rights of criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b), expose the basis of the defense to the prosecution in advance of criminal trial, or otherwise prejudice the case. If delay of the noncriminal proceeding would not seriously injure the public interest, a court may be justified in deferring it.

*Dresser*, 628 F.2d at 1376. The similarity of issues is perhaps the most important issue at the threshold in determining whether or not to grant a stay. *See Walsh Sec., Inc. v. Cristo Prop. Mgmt. Ltd.*, 7 F. Supp. 2d 523, 527 (D.N.J. 1998) (internal quotation marks omitted). This civil action accuses Mr. Ho and Ms. Yee of engaging in the same shoe theft ring that is the subject of the Indictment. As outlined above, the near perfect overlap of the facts alleged in the civil and criminal cases cannot be reasonably disputed. It is fully expected that information which would be considered relevant to the civil proceedings would also be material to the criminal proceedings. Mr. Ho's and Ms. Yee's Fifth Amendment rights are thus directly implicated by the issues in the case, and no

remedy exists that will allow them to both preserve these rights and defend this action except a stay of the civil proceedings.

**B.      Any Conceivable Prejudice to Nike is Outweighed by Mr. Ho's and Ms. Yee's Fifth Amendment Concerns**

Nike will not face any prejudice that outweighs Mr. Ho's and Ms. Yee's exercise of their Constitutional rights.  *See Volmar Distributors*, 152 F.R.D. at 40 ("The Court appreciates that this stay will result in inconvenience . . . to plaintiffs.  But under settled authority the Fifth Amendment is the more important consideration."); *Wehling v. CBS*, 608 F.2d 1084, 1089 (5th Cir. 1979) (holding that "three-year hiatus in the lawsuit" was preferable to forcing civil litigant "to choose between his silence and his lawsuit").  Whatever slight inconvenience to Nike that a stay may present will be minimized.  This case was filed approximately three months ago, and there will not be an indefinite delay in the civil proceedings as the criminal case moves toward resolution.  The formal criminal proceedings have been initiated with the criminal indictments, and a trial date has been set, which will be appropriately expedited by the Speedy Trial Act.

Moreover, delaying the civil case will not prejudice Nike's ability to access evidence.  The criminal case will involve virtually identical evidence and witnesses as the civil matter.  "[T]he fact that the witnesses for the two proceedings are likely to include many of the same people providing much of the same testimony should reduce the danger that any testimony will be lost as a result of the stay."  *McCormick*, 2010 WL 934242, at *3.  In fact, the requested stay may actually reduce the scope of discovery or otherwise simplify the issues by allowing the criminal case to go to resolution.  A guilty verdict or guilty plea may have collateral estoppel or res judicata effects, while an acquittal may expose the strengths and weaknesses of the case, assisting with the resolution of the civil matter.  *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331-32 (1979).  Additionally, resolution of the related forfeiture proceedings will help

determine to what extent damages (if defendants are liable, that is) Nike is entitled and whether there is risk of double-recovery or a windfall for Nike.

Nike may try to claim that delaying the civil matter will deplete any assets available to Nike for a future monetary reward, but, even if true, that is not sufficient justification for denial of the stay. *See Taylor, Bean & Whitaker Mort. Corp. v. Triduanium Fin'l*, 2009 WL 2136986, *4 (E.D. Cal. July 15, 2009) (granting a stay despite plaintiff's argument that it will be more difficult to recover monetary losses after the stay is lifted).  Moreover, Mr. Ho and Ms. Yee have not been found criminally or civilly liable for any of the conduct alleged in the Complaint or the Indictment; defendants enjoy the presumption of innocence and discussion of any future monetary reward is premature, especially when there have been no allegations that Mr. Ho or Ms. Yee are attempting to dispose of their assets.  Nonetheless, and in any event, Mr. Ho and Ms. Yee also intend to continue to work to a non-litigation resolution of this matter with Nike while any stay is in effect.  (Ungar Decl. ¶ 8.)

## C.     Proceeding with this Action Severely Burdens Mr. Ho and Ms. Yee

As described above, proceeding with this case will force Mr. Ho and Ms. Yee to choose between defending themselves in this action and preserving their Fifth Amendment rights. The extreme prejudice that will result from forcing this choice upon them outweighs any purported prejudice to Nike from a finite delay in this matter.  If Mr. Ho and Ms. Yee assert their constitutional privileges—a common occurrence in these circumstances—they risk not only losing the benefit of their own testimony, but also being burdened by adverse inferences.  *See Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976).

Additionally, as set forth in Ungar Declaration, Mr. Ho and Ms. Yee are expecting their first child in August.  (Ungar Decl. ¶ 9.)  Ms. Yee is currently on bed rest in her parents' home in

San Francisco, California.   (*Id.*) Mr. Ho, with permission of the United States Government, Pretrial Services, has joined Ms. Yee in California to assist with her care and the future newborn baby's care.   (*Id.*) A stay would also allow them time, as new parents, to tend to their child's early needs, prior to engaging in motion practice and the likely extensive discovery Nike will seek as part of these civil proceedings.   Moreover, Mr. Ho and Ms. Yee, to avoid additional stresses and complications, are still trying to reach a non-litigation resolution of this matter and require additional time to do so.   (*Id.* ¶ 8.)

**D.      The Convenience of the Court Weighs in Favor of a Stay**

The Court has an interest in managing its cases efficiently and without expending unnecessary resources.   A stay will help preserve the Court's limited resources and encourage potential settlement of the civil action while the criminal proceeding moves to resolution.   *See Jones*, 2005 WL 1287017, at *2 ("Staying the case makes efficient use of judicial resources by insuring that common issues of fact will be resolved and subsequent civil discovery will proceed unobstructed by concerns regarding self-incrimination.") (internal quotation marks omitted);   *see also Williams v. Thomas*, Case No. 08-623-PK, 2009 WL 4064769, *1(D. Or. Nov. 23, 2009) (staying civil case in light of pending criminal action "in an exercise of its discretion over the efficient administration of its docket").   The case is still in its infancy; the Complaint was filed approximately three months prior, and no dispositive motions have yet been filed that require the Court's attention.   A stay will maintain the pre-answer and pre-discovery status quo.

**E.      No Interests of Persons Not Parties to the Action will be Affected by a Stay**

There are no persons who are not parties to this action that would be detrimentally impacted by a stay. Nike's Complaint does not describe other participants or purported victims. The only other interested person – the United States Attorney – is best served by a stay.   The

federal prosecutor has a primary interest in proceeding to prompt resolution of the criminal matter, especially when there are related forfeiture proceedings that impact the purported victim's restitution.

**F.    The Interest of the Public Favors a Stay**

There is no disservice to the public interest by granting a stay in this case.  The enforcement of criminal laws is a societal priority, and the public has an interest in "ensuring that the criminal process is not subverted by ongoing civil cases."  *Douglas v. United States*, 2006 WL 2038375, *6 (N.D. Cal. July 17, 2006) (internal quotation marks omitted).  Moreover, "the public's interest in the integrity of the criminal case is entitled to precedence over the civil litigant."  *Jones*, 2005 WL 1287017, at *2 (quoting *Javier H. v. Garcia-Botello*, 218 F.R.D. 72, 75 (W.D.N.Y 2003)); *see also Benevolence Int'l Found., Inc. v. Ashcroft*, 200 F. Supp. 2d 935, 941 (N.D. Ill. 2002) (public policy "gives priority to the public interest in law enforcement.").  Absent a stay, this case will proceed to trial parallel to the criminal case, leaving Mr. Ho and Ms. Yee with no reasonable opportunity to offer a defense.  This scenario does not further the public's interest in a justice system that provides a viable means of securing the fair resolution of civil and criminal matters.  A stay promotes the public interest by providing Mr. Ho and Ms. Yee with a meaningful opportunity to exercise their constitutional rights and present a full and complete defense to the allegations in Nike's Complaint.

### III.    CONCLUSION

For the foregoing reasons, in order to protect Mr. Ho's and Ms. Yee's Constitutional rights, this matter should be stayed pending resolution of the related criminal matter, *United States v. Ho*, United States District Court, District of Oregon, Case No. 3:14-cr-00282-KI.

DATED: August 1, 2014

**ANGELI UNGAR LAW GROUP LLC**

*/s/ Steven B. Ungar*
STEVEN B. UNGAR, OSB #960029
KRISTEN L. TRANETZKI, OSB #115730
(503) 954-2232
Of Attorneys for Defendants Tung Wing Ho and
Denise Wei-Ching Yee